## Kennedy *vs.* City of Covington.

**Case 16.**

#### APPEAL FROM KENTON CIRCUIT.

**ORD. PET**

Every individual must so use his own property as not to interfere with the rights of others. Where two have the right to the use of the same property, and outlay is necessary to the perfect enjoyment of right by one party, and is also promotive of the enjoyment by the other, the expense of the outlay should be proportionally borne by each.

[The facts of the case appear in the opinion of the court.—REP.]

*J. Harlan* and *Tho. A. Marshall*, for appellant—

After stating the nature of the claim, and the prominent facts of the case, the principal facts relied on by the defendant, being, that before the establishment of the town of Covington, the ferry privilege across the Ohio, was granted to Thomas Kennedy, who owned the land on which the town was afterwards laid out; and that in the plat of the town, and in the sale and conveyance of the lots, the ferry privileges and appurtenant rights, were reserved to the proprietors, although the land from the edge of the bank to the water's edge was dedicated to the town, and that the privileges thus reserved are vested in and exercised by the heirs of Samuel Kennedy, in whose right the ferry is carried on. The counsel for the appellant contended—

1. That as the ferry was carried on by two boats, the presumption is, that as a general fact, only one was at the Covington wharf or landing at any one

time; the obvious purpose of having two, being that while one was passing from one side of the river, the other might pass from the other, so as to furnish constant opportunity of passing across from each side with as little intermission as possible. The two boats therefore occupying the wharf alternately, the occupation of it by both was about the same as to space and time, as the permanent occupation of it by one of them, or by any other boat of equal size. But in charging or taxing each of them one dollar a day for wharfage, which is the charge against any other boat of the same size, the tax or charge for the use of the wharf by the ferry-boats is in effect double the tax on other similar boats for an equal use of the wharf; and it is proved that it is four times as much as is charged against the wharf-boat of the same size, and which occupies permanently an equal portion of the wharf.

If the city has a right to tax the ferry-boats for landing at the shore or wharf, she can have no right to levy upon them a discriminating tax. The general interest committed to the charge of the city authorities, and of which, to the extent of their powers, they are entitled to judge, concur with the competition and example of other cities, to prevent the oppressive taxation of boats, which in navigating the river, have an option to use or not to use the shore or wharf of any city for landing. But the proprietor of a ferry has not only an exclusive privilege, but is under a precise and peremptory duty of having boats proper and sufficient for the accommodation of the public, and of bringing them to the shore to put off passengers, and of having them there to receive passengers as occasion may require. As to ferry-boats, therefore, there is a peculiar hardship in depriving them by a discriminating of the common guaranty against oppression, even if there be not an invasion of the ferry privilege, and of the laws made for its support in taxing them at all. The power to discriminate in taxing, and even the power

of taxing, if unlimited, includes the power of prohibition, or may be exercised with that effect. And it is an inconsistency to suppose that a municipal corporation holding its authority under the state may at its own discretion destroy or burthen a privilege guarantied by the state, before the establishment of the town, and which is sustained not only by the authority of law, but also by the sanctity of contract.

If it be said that the interest of the city is a guaranty against its imposing upon the ferry such a tax as would destroy its value, and thus prevent its use, it is answered that the law which grants the ferry privileges and imposes corresponding duties upon the grantee, has also created a tribunal to which it commits the right of determining between the public and the grantee of the privilege, the amount of compensation which in justice to both should be paid for the services required. The city has no right to interpose her judgment, and much less, to appropriate to herself, by a tax, such portion of the earnings of the ferry, as in her judgment, might still leave enough to keep it in existence. A tax upon the ferry or ferry-boats necessarily operates either to reduce the compensation below what is deemed just by the appropriate tribunal, or to require that it should either be kept at, or increased to a rate higher than justice, as between the public and the grantee of the privilege would authorise. And the effect must be that the city puts into her own treasury a portion of the just profits of the ferry, or a portion of the ferry charges which but for her tax, might be remitted to the public.

The city cannot, consistently, with the rights of the ferry, and of the public, impose upon either, at her own discretion, a tax for her own exclusive benefit. She has no right, under the form of wharfage, for the use of her shores, to impose a discretionary or arbitrary tax upon an established ferry; and certainly possesses no power of taxation, which, unless

restrained by her sense of her own interest she could use for the destruction of the ferry privilege.

2. The reservation of the ferry privileges and appurtenant rights to the proprietors of the town, which necessarily include the right of landing, and remaining as long as necessary at the shore, furnishes a distinct additional ground of argument and proof against the right of the town or city of Covington to charge for the use of her shore and public grounds on the river for the legitimate purposes of the ferry, which seems not to have been confined or limited to any particular portion of the shore in front of the town. (8 *Dana*, 50.)

3. And if the fact of her having improved the shore or parts of it by grading and paving, called wharfing, should be regarded as giving her a right to charge for the additional convenience to ferry-boats as well as others in using her landings, this right cannot justify a discretionary tax or charge, and especially against the owner of the ferry who had a perfect right to use the shore without charge before it was improved by the city, and was bound to use some convenient part of the shore. The improvement of the landing could at most entitle her to nothing more from the ferry or its owner than a just compensation upon the principle of a *quantum meruit* for the benefit derived from the expenditure of the city. She could not acquire by improving her own streets and public grounds, a discretionary power of taxing the ferry, or of charging it in the name of wharfage fees for the use of the landings.

4. It is contended that she had no right to claim against the ferry, compensation on the principle of a *quantum meruit*, on account of the improvement of some of her streets leading to the river, and of portions of the intervening shore, unless with a fair option of using other landings free of charge as before the conductors of the ferry used the improved landings; and it is denied, that in this case, the city

has a right to recover even on the ground of a *quantum meruit*, if the defendant might have used unimproved parts of the shore without charge.

The original landing of the ferry had been at the foot of Garrard street, which Kennedy graded and paved, but the city afterwards changed the grade, using for repaving it the materials which Kennedy had placed upon it. And, although the ferry-boats had liberty to use the landing thus improved by the city, at a rate of wharfage fees, about twenty-one per cent. less than for other landings, the charges were still very heavy; and wharfage being charged for landing on every part of the shore in front of the city. which was at all convenient for the purpose, (at least that may be assumed from the evidence,) there was no fair option of landing free of wharfage at any proper place. But the ferry for years past before these charges were made, and as soon as Scott street was made passable to the river, used, and has continued to use the foot of Scott street as a place of landing, and it is proved to be the most convenient place. During this use the city has graded and paved the foot of Scott street and the adjacent shore; and it is for the continued use of this landing for one year that she charges and claims to recover $730, being one dollar a day for each boat. It is denied that the city, by improving for her own purposes, and according to her own duty, her streets running to the river, on some, or on one of which Kennedy was rightfully landing his ferry, could either compel him to relinquish that use of it, or to contribute to the reimbursement of the expenses incurred by her for the benefit of her citizens without his request. He had a right to a landing for his ferry-boats in front of the town; and was obliged to run his ferry there. The city, by her ordinances, charged each of his boats one dollar a day for using any convenient part of the shore, except the foot of Garrard street, for the use of which something less was charged, probably because he had first improved it. But

while it is considered certain for reasons which have been stated, that her claim to charge wharfage against the ferry-boats at her discretion is wholly groundless, it is confidently insisted, that she can found no claim, even on the principle of a *quantum meruit*, upon her voluntary improvement of her own streets down to the river where they meet the ferry.

5. The ferry, by its locality and uses as well as by its identification with the origin of the town, is almost as much a part of it as the streets themselves. As a means of passing across the river from and to the streets it is in effect but a continution of them. The facility of going to and from the ferry-boats is an object for which the city should, and presumably does, improve her streets down to the water's edge, as any other object of convenience to her citizens. And when she thus improves a street which furnishes the most access to and from the city by means of a ferry actually using it for that purpose, the presumption should be that is done for the convenience of her own citizens, and of the public generally. And it is difficult to conceive upon what ground she can make any just claim against the ferry or its owners for any incidental advantage which they may receive from an accommodation which the city furnishes to her own citizens at their own expense. The passengers are certainly not chargable by the city for using her st·eets and pavements in going to and from the ferry-boats. The boats are not chargable for occupying the water at the foot of the street, nor even for making fast to the land there. They have a right to do both. The right of ferrying is the right not only of transporting passengers on the water, but of receiving and discharging them at the land. And, although the city may charge for the use of her shores or wharves, such boats as having an option voluntarily resort to them, yet, as her ownership in the soil itself is subservient to this ferry privilege, as the ferry-boats have a right to use a convenient part of her shore, she can-

not, by improving it for her own convenience and general advantage, either deprive the ferry-boats of its use or make them chargable for using it in the course of their duty. The court, by its instructions, conceded to the city the plenary right of charging wharfage against these boats at her discretion, and refused to restrict her recovery to a *quantum meruit*, or by any other principle or rule.

A reversal is asked for.

*R. Simmons* for appellee—

The question in this case is whether the city of Covington has the right, and is clothed with the power and authority to impose upon, and collect from the ferry owners a regular and fixed rate of wharfage, for the use and occupancy of the city wharf, by their boats and platforms? This question depends upon another question, which is this: Is the imposition of wharfage on these ferry owners an infringement of their ferry privilege? The negative of this last question can be, and is sustained on two distinct grounds—First, even admitting they have a right to land their boats at the city wharf, this right to land does not imply and carry with it the right to land free of charge. Second, the ferry owners have elected at what point they would land their boats, which was at the foot of Garrard street, and not at the point where the wharf has been built, and they will be held to, and bound by that election.

These two propositions will be taken up and disposed of in the order in which they have just been named. It will be admitted for the present that the proprietors of this ferry have the right to land their boats at the city wharf, or at any other point on the Ohio river, within the original limits of the town of Covington, as first laid off, as incident and belonging to the ferry franchise. But it is emphatically denied that the right to land implies, or carries with it, the right to land free of charge. The full, perfect, and complete right to land may exist in the absence of

the right of doing so free of charge. So, also, the right to impose a burthen or charge on such as have and exercise this right, may exist and be enforced, and yet be no interference with, or violation of such right. The right to land at this wharf is one thing, and the right to land free of charge is quite another thing, and the right to charge for such landing is very different from both. They are as separate and distinct as any three individuals of this community. They may be separate and independent of each other, or combine and be united in the same person—one may have the mere naked right to land only; another, in addition to the right of landing, may have the right to do so free of charge, while the right to impose this charge or burthen may exist and reside in a third party. The Kennedys being the proprietors of the ferry, (as has been conceded already,) have, as such, a right to land their boats at the wharf of the city; and the city being the owner of the wharf and the soil on which it is built, has the undoubted right to charge the Kennedys reasonable wharfage for landing their boats thereat.

That the title to the ground between the lots, as originally laid off, and the water's edge, resides in the city of Covington, for the use and benefit of her population, there can be no question; for such part of the town as lies between the lots and edge of the bank of the Ohio river, has been expressly dedicated to the city; and that portion which lies between the edge of the bank and the water's edge has become vested in the city for the same purpose, by implied dedication. And further, it is beyond all question that the city has the exclusive right to construct wharves, and as incident thereto, the right to fix regular rates of wharfage, and provide for the collection of the same. There is no other person, either natural or artificial, that has or can exercise this power. The city has this power in exclusion of all others, and if she can collect from one she can from all; no one can come forward and claim exemption—and she herself

has no right to discriminate in favor of any—all must be dealt with alike.   Then if the city has the right to collect this wharfage, the Kennedys have no right to refuse to pay it, and it is no infringment of iher franchise, but it is an infraction of the plaintiff's rights not to pay it.

The rights of the Kennedys are equally as definable.   They have all ferry right—or in other words, the exclusive privilege of running a ferry from Covington, Kentucky, to Cincinnati, Ohio, on the opposite shore.   There is no other individual, either natural or artificial, that can run a ferry to, or from the points just designated, and not be guilty of an infraction of their rights.   But still the question recurs, are their rights violated in requiring them to pay the city for using or occupying her wharf?   The affirmative of this proposition would be maintainable if another one on which it depends was true, namely, that the right to land implies the right to land without charge.   To admit this to be correct would lead into many absurdities; for instance, every steamboat on the waters of the Ohio river, plying between this city and Louisville, for commercial purposes, has a perfect right to land at the public landings of this city, and the city authorities have no power to prevent it, yet the owners or commanders of such steamboats must pay the regular and fixed rates of wharfage to the proper authorities; and every citizen in this community has an undeniable right to cross the Ohio river to Cincinnati, in the ferry-boats employed in transporting passengers from this side to that, yet each must pay the fixed rates of ferriage.   The correctness of these propositions no one has ever doubted; therefore, these ferry owners, notwithstanding they may have the right to land their boats at the public landing of the plaintiff, yet they must, in like manner, pay the charges of wharfage as regularly made out against them.   The only conceivable difference in this case of the ferry-boats and that of a boat running back and forth on the Ohio river from

Cincinnati to Louisville, is this: in the former case the right to run the ferry-boat is exclusive, and in the latter the right belongs in common to all. This is no difference whatever in principle, in this regard they are precisely alike. Therefore, it is plain to be seen, that if in the right the Kennedys have to land their boats at the public landing of the city, is implied the right to do so free of charge, the same implication would arise in every other case of the kind.

The man who desires to go from Covington to Lexington, in the interior of Kentucky, has a perfect right to be transported there upon the cars of the Covington and Lexington railroad; but the railroad company has no less a right to require him to pay the regular and fixed charges for being thus transported; and when he has arrived there he has a right to demand of any of the hotels in that city to entertain him as a guest or traveler, while on the other hand the landlord has just as clear a right to demand of him pay for the entertainment he has received, and if it is refused, he is thereby released from all obligations to give him further entertainment.

Thus it will be seen to what absurdities the recognition of this principle will lead—it would be equally applicable to all cases and kinds of common carriers; to stage coaches, steam-boats, and all other vehicles and vessels that come under the general term of common carriers. But again, how can the mere imposition of a reasonable wharfage upon the Kennedys be an infringement of their rights, as owners of this ferry? As such, we will ask, what are their rights? Why clearly to run a ferry, and that too in exclusion of all others. This is a privilege that belongs exclusively to them, and which no one can enjoy without their permission. Then, as they have the exclusive right to run the ferry, it follows, as a matter of course, that if any person, or the city of Covington herself, shall undertake to run a

ferry across the Ohio river from Covington to Cincinnati, their rights would thereby be violated; but what interference is it, or can it be, with their exclusive ferry rights, to require them to pay a reasonable wharfage for using and occupying the plaintiff's wharf with their boats and platforms—they can pay this and still be in the full enjoyment of their exclusive privilege.

But, again, it is contended that the exclusive and absolute right they have and enjoy in this ferry as their property, is inconsistent with, and excludes any and all right on the part of the city to impose any charge or burthen whatever on them or their ferry privilege. This proposition, however, on that account cannot be true; if it was, there would be no power residing any where in the commonwealth of Kentucky to impose a tax or burthen of any description on property, either personal or real, for any purpose whatever; for the Kennedys have no greater property nor higher title in and to their ferry franchise, than the owner in fee has in and to his farm, and the horses and cattle upon it. The owner in fee of a farm, and of the horses and cattle he may have thereon, has the greatest property therein and the highest right and title known to the law; he then has what is denominated in the law books, the sole and exclusive property in them. The Kennedys can have no greater property, nor higher right in and to their ferry franchise or property—for such it must be regarded. Well, then, as it is property, and no more nor less, and its proprietors have the same interest therein, and hold it by the same tenure that other property is held by, it follows as matter of course that it is subject and liable to the same burthens as other property. Lands and slaves are subsabject to the burthen of taxation by the legislative authority, for all legitimate purposes; this no one ever denied, and this no one ever contended was a violation of the right of property the owner had in and to his land and slaves. The right of the

government to impose taxes and burthens upon property is not inconsistent with the sole and exclusive right the owner has thereto. The Kennedys have no better right and no higher title to their ferry franchise and ferry-boats, than the owner has to his steam-boat, which, for commercial purposes, he is constantly running upon the Ohio river, between the cities of Covington and Louisville. Then if the city of Covington has a right to collect wharfage from the one, she has the right to collect it from the other; and if the city of Covington has the right to tax the property of her inhabitants, to make a wharf, and to keep the same in good repair, she has the undoubted right to tax the ferry franchise, which is but the property of its owners, for the same purpose. Therefore, we are unable to see that the collection of wharfage from these ferry owners, can be an infringment of their franchise.

The second point to be discussed in this case is, that the ferry-owners have elected at what point they would land their boats, which is at the foot of Garrard street, and not at the point where the wharf has been made; and they will be held to, and bound by that election. It appears from testimony in this case, that Thomas Kennedy was the original grantee of this ferry. That in the year 1822, when he obtained from the Campbell county court this ferry grant, he was in the daily habit of landing his boat at the foot of Garrard street, and continued so to land as long as he had control of the ferry; and this same point has been used and occupied by his heirs and successors ever since, as a landing for their boats, until the time at which the wharf was completed, when they immediately moved their boats and platforms to the foot of Scott street, and took possession of the wharf, and continued in the use and occupancy of the same till the bringing of this suit.

Now, there is no question but that they have the right to land their boats at some point on the bank

of the Ohio river, within the limits of the original 150 acres, which composed the original town of Covington; but the exercise of this right does not, and cannot exclude the city from the rights and privileges which she has as sole proprietor of the landing—as sole proprietor of the soil. The city of Covington has the undoubted right, as the sole proprietor of the landing and soil, to build a wharf thereon, for the use and benefit of her inhabitants, and for the advancement of commerce and trade generally.

In express terms, the bank of the river Ohio was reserved to the city as a common, for her use and benefit; so it is very manifest the city has rights as well as the Kennedys. They can't use and occupy the whole length of the river bank with their boats, to the entire exclusion of the city; nor can the city, on the other hand, use and occupy the entire landing, to the exclusion of the ferry owners, from their rights as such. Both of these parties have their individual rights, which must not be interfered with. The rights of each are easily defined. The Kennedys have the right to run a ferry, in exclusion of all others. The city has the exclusive right to the wharf, and to impose and collect wharfage.

Now, it is a principle of law laid down in the books, and recognized by all courts, that every person, in the free use and exercise of the rights pertaining to his own property, shall so act and use the same as not to interfere with the rights of others, in the exclusive control of their property, and the free exercise of the rights and privileges pertaining thereto. Then this case must be disposed of in such a manner as to give both parties the full benefit of their individual rights—in such a manner as not to infringe upon the rights of the one, nor curtail the privileges of the other. And therefore we say, as these ferry owners have, for a long series of years, used and occupied a point at the foot of Garrard street as their place of landing, that they shall now be held to it. For in making this election, and using

this point continuously for more than thirty years, they said, in the most unmistakable way, to the city and the rest of the world, that this point was, in all time to come, to be their place of landing; and that the other portion or part of the river bank was free and open for any and all legitimate uses and purposes to which the city might apply it; and therefore the city, in pursuance of what they have said by their acts for more than thirty years, proceed to construct a wharf, at the cost of many thousand dollars, at a point where the boats of the Kennedys were not in the habit of landing, and as soon as the wharf was completed, the ferry owners went down and took possession of the same, with their boats and platforms, even to the exclusion of other boats, freighted with various articles of commerce and trade.

Suppose the city of Covington, under this state of case, should have made a wharf at the foot of Scott street, just one hundred feet in length, and just of sufficient size to accommodate the boats landing there for commercial purposes, and as soon as it was completed, the Kennedys should leave and abandon their ancient landing, and take possession of this small wharf, made by the city for her own use, and occupy it both day and night, to the entire exclusion of other boats, and thereby materially, if not entirely interfere with the commercial transactions of the city. This would certainly be an infringement of the well known maxim of the law, which says that each individual of a community must use his own property, and exercise his own rights, in such a manner as not to interfere with the property of another, or infringe upon his rights. Therefore, the proprietors of this ferry ought to be required to stand by their election, and their ancient landing; for if they were permitted, at pleasure, to change their place of landing, and drive the city from any portion of the public landing which she might improve, for the express purpose of carrying

on trade and commerce with the rest of the world, the city would have no guaranty of her rights, and no power to enforce them; in fact they would only exist in name. Then to keep these parties in proper position, so that they will not interfere one with the other, the owners of the ferry must be required to stand to their election—by their original place of landing, which they have appropriated to themselves, for that purpose, by a continuous use of more than thirty years, and the city, at least, permitted to use and occupy any other portion of the public landing, for her legitimate uses and purposes, not previously appropriated by the proprietors of this franchise. Then there will certainly be no conflict, but both left in the full enjoyment of their individual rights.

It has already been said, that the owners of this franchise have used and occupied a point on the Ohio river—selected by them—continuously, for more than thirty years; thereby saying to the city, and the rest of the world, that the point thus selected and appropriated by them was to be the place of landing for them, in all time to come, as it had been in all time past. Now, certainly, after all this, they will not be permitted to deny and retract what they have said and done daily, for so many years, in the sight and hearing of every body—certainly, after all this, they would not be permitted, by superior force and strength, to oust the city of her rights, and take possession of the wharf, to her exclusion, made by her own hands and money—for the general good, and the advanc ent and increase of trade and commerce. This, beyond question, would be an infringement of the rights of the city. By their own acts they are estopped to do this—by their own acts, for more than thirty years, they themselves have said they have no right to do this. Grant this, and what do the rights of the city amount to? If they have the right to take possession of that portion of wharf at the foot of Scott street, they, after having worn it away and destroyed it, by constant use, have

just as good a right to pursue the city to some other point, where she may have made a wharf for the public good, and take possession of it also; and so on to any extent. Then upon what a slender foundation the rights of the city must rest. This would be conceding to the Kennedys the right to determine at what point the city must erect a wharf, when it is really in the power of the city to say where they shall land their ferry-boats; for this ferry is a sort of public thoroughfare, created and kept up for the public good, and not for the aggrandizement of the owners thereof; and in this view of the case, they ought to be required to land at a point or points best calculated to subserve the interest and convenience of the public.

They can also be required, if need be, to increase the number of their boats, from time to time; and if they at any time should fail or refuse to furnish suitable boats of sufficient numbers to accommodate the public in an ample and commodious manner, the city would have the undoubted right to furnish and run the boats herself. So the rules and principles of law governing this case, look rather to the good of the public, than to the private and individual interest of these ferry owners. A franchise like this could never be safely left to the absolute control of the owners thereof. It would invariably be diverted from its proper and primary object, which is to secure the general good, and be converted into an engine of oppression, and made use of as a means of making money by extorting from the community unreasonable ferry rates. They have not even the right to say what the ferry rates shall be, nor to say what hours they will run their boats, and what hours they will not run them. These are matters over which they have no control; the object of the law being to afford direct protection to the community, and incidental protection to the owners of this franchise. The primary object is to guard and secure the interest of the public; and when that is done,

any advantage or benefit that may spring indirectly from the ferry franchise, its owners are welcome to. So it will be seen that it would not be proper even to let the owners of this or any other ferry determine the place of landing for their boats, any more than it would be to give them absolute control of the ferry rates; unless they are controlled the community must suffer—unless restrained they will use that which was intended to dispense public benefits, as a means to crush out the public interest, and for their own personal aggrandizement.

Then, lastly, it is contended that this case is improperly in the court, because more than three days had elapsed from the verdict and judgment, when the defendant made his motion for a new trial. The Code requires all motions for new trials to be made within three days from the rendering of the verdict and judgment, and this the defendant did not do.

Judge SIMPSON delivered the opinion of the court:

December 26.

This action was brought by the city of Covington against Robert Kennedy, to recover the sum of seven hundred and thirty dollars, for the use of the plaintiff's wharf by the defendant to land his ferryboats, from the 1st day of December, 1850, until the 1st day of December, 1851.

The defendant resisted the plaintiff's right to recover wharfage against him, on the ground that the heirs of Samuel Kennedy, deceased, are the owners of a ferry across the Ohio river from Covington, and have a right to land their boats at any point within the city limits as originally laid out, without paying wharfage to the city. The court below decided against the right claimed by the defendant, and he has appealed to this court from a judgment which the plaintiff recovered against him for the amount demanded in the petition.

In the case of *Kennedy's heirs vs. Covington*, 8 *Dana*, 50, the right of the ferry franchise at Covington

was decided to be in Kennedy's heirs; it was also decided that the city of Covington extended to the Ohio river, and that the title of the strip of land next to the river, was held in trust, not only for the use of the city, but also for the use of the owners of the ferry franchise. The extent of the rights of the respective parties is therefore the principal question that arises in this case.

The right of the city to construct wharves on the strip of ground referred to, or to use it in any mode calculated to promote the prosperity of the city, or the convenience of its inhabitants, not inconsistent with the exercise of the ferry franchise belonging to Kennedy's heirs, is not controverted. But it is contended, that as the owners of the ferry have a right to land at the city wharf, as an incident to their ferry franchise, that they cannot be required to pay wharfage for the exercise of this right.

*Every individual must so use his own property as not to interfere with the rights of others. Where two have the right to the use of the same property, and outlay is necessary to the perfect enjoyment of right by one party, and is also promotive of the enjoyment by the other, the expense of the outlay should be proportionally borne by each.*

It is a well settled principle of law, that every owner of property shall use and exercise the rights incident thereto, so as not to interfere with the rights and privileges which belong to other persons. Now, in this case, both parties have rights which attach to the same property; one of them the right to use it as a ferry landing, the other to use it for the benefit of the city, and the convenience of its inhabitants.

To the full enjoyment of the right which belongs to the city, the grading and paving of the landing, and the construction of the wharves, is indispensably necessary. For the accomplishment of this object, a considerable expenditure of money is required, and by its accomplishment, the interest of both parties is evidently promoted. The construction of wharves increases the business, the prosperity, and the growth of the city, and thereby contributes to the enhancement of the value of the ferry privilege, by a corresponding increase of its business.

As, therefore, the city is compelled to incur a large expenditure, to enable her to have the full enjoy-

ment of her rights in the common property, and as it operaest to the advantage of both parties, every principle of justice and equity requires, that the owners of the ferry, if they use the improvement, should be made liable, in some form or other, to contribute their rateable proportion to the cost of its construction. This liability cannot, however, authorize the city to subject them to the payment of regular wharfage. Such a charge might materially diminish the value of the ferry franchise, inasmuch as the city having the power by ordinance, to establish the rates of wharfage, might make them so exorbitantly high, as to require for their payment nearly all the profits of the ferry. Such a right on the part of the city would be wholly inconsistent with the rights which appertain to the ferry franchise. The interest of the city, in sustaining and encouraging the trade and business of the place, operates as a check upon her, in fixing the rate of charges to which boats engaged in commerce shall be subjected. And such boats can navigate the river, and follow their usual employment, without stopping at the plaintiff's wharf at all, if she should attempt to make them liable for unreasonable charges for doing so. But she is under no such check, in determining the rates of charge, to which the proprietors of the ferry shall be subjected; nor have they the option to abstain from the use of the wharf, but are compelled to use it, and have a right to do so, in carrying on the business of their ferry.

We have had some difficulty in fixing the criterion by which the extent of the liability of the owners of the ferry, for contribution, for improving the wharf, shall be ascertained and determined. We have, however, concluded that they ought to pay one half the cost of constructing so much of the wharf at the foot of Scott street, as is necessary for the convenient landing of their boats, and the passengers therein, and which they have been using for that purpose. The expense incurred in grading

L. & N. R. R. Co
*vs.*
YANDELL.

and paving from the end of Scott street, across First or Front street, to the water's edge, of so much thereof as may be deemed necessary for the use of the ferry, must be taken into the estimate. The owners of the ferry will also be liable to the city for one half the cost of such repairs, as may from time to time, become necessary on that part of the wharf, and may be made by the city.

The judgment against the defendant will have to be reversed; and as the plaintiff in her petition, has only claimed wharfage, she will be compelled, to enable her to claim the contribution to which she is entitled, to amend her petition and set out a different cause of action.

Wherefore, the judgment is reversed and cause remanded, with directions that the plaintiff be permitted to file an amended petition, if she wishes to do so, and for further proceedings consistent with this opinion.